**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                                   :
MARVIN MAYS,                       :
                                   :   Civil Action No. 04-2886 (WJM)
             Petitioner,           :
                                   :
       v.                          :        O P I N I O N
                                   :
ROY L. HENDRICKS, et al.,          :
                                   :
             Respondents.          :
_____:
```

**APPEARANCES:**

Marvin Mays, <u>Pro</u> <u>Se</u>
#275056
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Linda K. Danielson
Deputy Attorney General
Office of the Attorney General
Appellate Bureau
P.O. Box 086
Trenton, NJ 08625

**MARTINI, District Judge**

        Petitioner, Marvin Mays, filed the within petition for a

Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Respondents

have filed an Answer.  The Court has considered all submissions.

For the reasons set forth below, the Petition will be denied.

**BACKGROUND**

1.   Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation:

> According to the State's proofs, on March 27, 1983 at approximately 5:30 p.m., defendant broke into K.P.'s home in Belleville while armed with a knife and sexually assaulted her.  He also robbed her of several rings and necklaces, some of which had the letter "K" on them.  During the incident, K.P.'s father returned home and defendant ran out the front door.
>
> Later that evening at approximately 10:00 p.m. defendant confronted H.K. in Irvington as she was getting out of her car near her house.  H.K. yelled at defendant and told him that he had frightened her.  She testified that defendant told her that he was sorry that he had frightened her and that he was trying to sell her some jewelry.  He showed her a necklace and ring with the initial "K" on them.  H.K. said defendant then grabbed her hair, put a knife to her side, and took her to a neighbor's backyard.  Defendant told H.K. to remove all of her jewelry and repeatedly hit her. He then sexually assaulted H.K.  Defendant then took H.K.'s car, jewelry and purse and fled.
>
> The morning after the incident, H.K.'s father went to the scene of the assault and found an electronic organizer.  He gave it to Sergeant Mazauskus of the Irvington Police Department who was investigating the incident.  No identifiable fingerprints were found on the organizer.
>
> At trial Belleville detective Edgar Panier testified that names and phone numbers were retrieved from the electronic organizer and they were "tracked." Mazauskus then testified that he used the organizer during his investigation.

See State v. Mays, A-4077-95T4 (Jun. 4, 1999), pp. 4-5.

2.   Procedural History

On July 7, 1989, an Essex County Grand Jury indicted

Petitioner on seventeen counts, including:

Count One:         Kidnapping in the First Degree, contrary to
                   N.J.S.A. 2C:13-1b(1).
Count Two:         Robbery in the First Degree, contrary to
                   N.J.S.A. 2C:15-1.
Count Three:       Aggravated Sexual Assault in the First
                   Degree, contrary to N.J.S.A. 2C:14-2(4).
Count Four:        Aggravated Sexual Assault in the Second
                   Degree, contrary to N.J.S.A. 2C:14-2.
Count Five:        Terroristic Threats in the Third Degree,
                   contrary to N.J.S.A. 2C:12-3.
Count Six:         Aggravated Sexual Assault in the Second
                   Degree, contrary to N.J.S.A. 2C:14-2(4).
Count Seven:       Aggravated Criminal Sexual Contact in the
                   Third Degree, contrary to N.J.S.A. 2C:14-
                   3(a).
Count Eight:       Unlawful Possession of a Weapon in the Fourth
                   Degree, contrary to N.J.S.A. 2C:39-5(d).
Count Nine:        Possession of a Weapon in the Third Degree,
                   contrary to N.J.S.A. 2C:39-4(d).
Count Ten:         Aggravated Sexual Assault in the First
                   Degree, contrary to N.J.S.A. 2C:14-2(a)(4).
Count Eleven:      Terroristic Threats in the Third Degree,
                   contrary to N.J.S.A. 2C:12-3.
Count Twelve:      Burglary in the Second Degree, contrary to
                   N.J.S.A. 2C:18-2.
Count Thirteen:    Robbery in the First Degree, contrary to
                   N.J.S.A. 2C:15-1.
Count Fourteen:    Aggravated Assault in the Second Degree,
                   contrary to N.J.S.A. 2C:12-1(b)1.
Count Fifteen:     Aggravated Criminal Sexual Contact in the
                   Third Degree, contrary to N.J.S.A. 2C:14-
                   3(a).
Count Sixteen:     Unlawful Possession of a Weapon in the Fourth
                   Degree, contrary to N.J.S.A. 2C:39-5(d).
Count Seventeen:   Possession of a Weapon in the Third Degree,
                   contrary to N.J.S.A. 2C:39-4(d).

3

Petitioner was received into the State of New Jersey from a Minnesota prison pursuant to the Interstate Agreement on Detainers on June 1, 1992.

After various pre-trial conferences and hearings, Petitioner was tried by jury commencing on April 1, 1993 in the Superior Court of New Jersey, Law Division, Essex County ("Law Division"). The jury found the petitioner guilty on counts 1, 2, 3, 4, 5, 7, 8, and 9; however, they were deadlocked on the remaining counts, which concerned the Belleville incident and which the Court eventually dismissed pursuant to the motion of the State.  The Court had also dismissed count 6 for lack of evidence at the end of the State's case.

On April 6, 1995, Petitioner was sentenced to an aggregate sentence of 50 years imprisonment with 25 years of parole ineligibility.  Petitioner appealed his conviction and sentence to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  The Appellate Division affirmed the conviction, but remanded the matter for an amendatory judgment of conviction concerning Petitioner's sentence.  On September 28, 1999, Petitioner's petition for certification from the Supreme Court of New Jersey was denied.

On December 29, 1998, Petitioner filed a motion for Post-Conviction Relief ("PCR") in the trial court.  He alleged ineffective assistance of trial and appellate counsel.  Oral

4

argument was held, but the trial judge did not conduct an evidentiary hearing.  The PCR motion was denied on March 16, 2001.

Petitioner appealed the denial of the PCR motion.  The Appellate Division affirmed the denial on December 3, 2002.  See State v. Mays, A-4995-00T4 (Dec. 3, 2002).  The New Jersey Supreme Court denied Petitioner's petition for certification on April 28, 2003.

The instant petition was received on June 21, 2004, and filed on July 20, 2004.  On October 5, 2004, Petitioner was advised of his rights pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  On January 24, 2005, Respondents filed an Answer and the state court record.  On April 7, 2005, Respondents filed an Amended Answer asserting that Petitioner was time-barred from

bringing the instant petition.[1]  On January 9, 2006, after

acquiring leave of this Court, Petitioner filed a Traverse.[2]

---

[1]     The limitations period for a § 2254 habeas petition is set forth in 28 U.S.C. § 2244(d), which provides in pertinent part:
> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; ...
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

[2]  Petitioner argues that the statute of limitations should be equitably tolled due to the fact that he was transferred from one prison to the medical unit of another prison, and was not able to secure his property until almost one month later.  Once he had access to his property, Petitioner promptly notified the Court and filed the instant petition.  As this Court finds that the instant Petition is deniable on the merits, the Court will not dismiss for failure to comply with the statute of limitations, as Petitioner may have demonstrated exceptional circumstances that prevented him from filing a timely petition, Fahy v. Horn, 240 F.3d 239, 244-45 (3d Cir. 2000), and appears to have exercised "reasonable diligence in investigating and bringing the claims," Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 618-19 (3d Cir. 1998).  See also Lott v. Mueller, 304 F. 3d 918 (9th Cir. 2002)(remanding case for consideration of equitable tolling when Petitioner denied access to files during two transfers where without equitable tolling Petition would be only 7 to 20 days late).

<u>DISCUSSION</u>

A.   <u>Petitioner's Claims.</u>

Petitioner asserts the following arguments for habeas relief:

1.   The trial judge erred in failing to sufficiently tailor the identification charge to point out the many inconsistencies in the accounts of the witness.

2.   The trial judge erred in failing to cure the prejudicial information admitted concerning defendant's prior incarceration.

3.   The trial judge erred in allowing evidence of an electronic organizer to be heard by the jury as it constituted hearsay that was inadmissible.

4.   Petitioner's conviction was obtained as the result of ineffective assistance of counsel at trial.

<u>See</u> Petition for Writ of Habeas Corpus, ¶ 12.

Petitioner has raised the instant claims before the New Jersey state courts.  Therefore, they are properly before this Court for a decision on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(1). To the extent that any of the claims are not exhausted, this Court exercises its discretion to decide them on the merits, in accordance with 28 U.S.C. § 2254(b)(2).

B.   <u>Standards Governing Petitioner's Claims.</u>

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in

custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), federal courts in habeas corpus cases must give considerable deference to determinations of the state trial and appellate courts.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus.  The statute reads as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court explained the application of § 2254(d)(1).  The Court analyzed subsection 1 as two clauses:  the "contrary to" clause and the "unreasonable application" clause.  The Court held

8

that under the "contrary to" clause, "a federal court may grant
the writ if the state court arrives at a conclusion opposite to
that reached by [the Supreme] Court on a question of law or if
the state court decides a case differently than [the Supreme]
Court has on a set of materially indistinguishable facts." Id.
A federal court may grant the writ under the "unreasonable
application" clause, if "the state court identifies the correct
governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case." Id. at 413. Habeas relief may not be granted
under the "unreasonable application" clause unless a state
court's application of clearly established federal law was
objectively unreasonable; an incorrect application of federal law
alone is not sufficient to warrant habeas relief. See id. at
411; see also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000),
cert. denied, 532 U.S. 980 (2001); Matteo v. Superintendent, SCI
Albion, 171 F.3d 877, 891 (3d Cir.), cert. denied, Matteo v.
Brennan, 528 U.S. 824 (1999). Thus, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent. See Werts, 228 F.3d at 197; see also Jacobs v. Horn,
395 F.3d 92, 100 (3d Cir. 2005).

With regard to 28 U.S.C. § 2254(d)(2), a federal court must confine its examination to evidence in the record.  See Abu-Jamal v. Horn, 2001 WL 1609690, at *12 (E.D. Pa. December 18, 2001). In addition, the state court record should be reviewed to assess the reasonableness of the state court's factual determinations. See id.  Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Court of Appeals for the Third Circuit has ruled that this presumption of correctness can be overcome only by clear and convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d Cir. 2001)(citing 28 U.S.C. § 2254(e)(1)).  "A finding that is well-supported and subject to the presumption of correctness is not unreasonable."  Abu-Jamal, 2001 WL 1609690 at *12 (citing Duncan, 156 F.3d at 198).

Furthermore, federal habeas courts ordinarily refrain from revisiting credibility determinations as "it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the witnesses on habeas review."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  A habeas petitioner therefore "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

**C.**   **Petitioner's Jury Charge Claim.**

Petitioner argues that the trial judge did not "remind" jurors that the victim testified that she had problems "identifying ages of non-asians," that the picture of the Petitioner shown to the victim was old, and that she had picked out other peoples' pictures the night of the crime and identified them as Petitioner.

The trial judge charged, in relevant part:

> The State must prove that the defendant is the
> person who committed the alleged offenses.  The
> defendant has neither the burden nor the duty to show
> that the offenses were committed by someone else or to
> prove who the identity of that other person may be.  In
> order to meet its burden of proof with respect to the
> identification of the person who committed the
> offenses, the State has presented the testimony of [the
> victims].  You will recall that both of these witnesses
> testified that they identified the defendant first from
> photographs which you will have as physical evidence in
> the case; and in the courtroom, as the person who
> committed the offenses.

11

It is the State's contention that the identifications of the defendant by the two victims were based upon the observations and perceptions which they made of the defendant on the scene at the time the offenses were being committed. It is your function as jurors to decide what weight to give to this testimony. You must decide whether it is sufficiently reliable testimony upon which to conclude that this defendant is the person who committed the offenses charged.

* * *

. . . It is your duty on the issue of identification to consider whether the identifications were unmistaken and accurate. And in doing so, you should consider all of the surrounding circumstances of the identification, such as the physical acts of the witnesses, as the scene, and the opportunity which she had at the time and under all of the attendant circumstances to make observations and perceptions of the person who they say committed the offense.

R25 at pp. 60-62.

The Appellate Division examined this argument on direct appeal, finding:

We next consider defendant's contention, raised for the first time on appeal, that the trial judge erred in failing to sufficiently tailor the identification charge to point out inconsistencies in the accounts of the various witnesses. In support of that contention defendant relies upon State v. Edmonds. Ordinarily, the court should tailor its instructions in a manner that explains the law to the jury in the context of the material facts of the case. However, in Edmonds, the victim's in-court identification was inconsistent with her out-of-court identification. ... We concluded that the judge's identification charge was insufficient in light of the fact that the victim's in-court and out-of-court identifications were "glaringly inconsistent." Here, there is no such glaring inconsistency which would justify our concluding that the failure to sua sponte give a fact specific identification charge was clearly capable of producing an unjust result. Again, we infer from counsel's

12

> failure to object that at the moment he perceived no
> prejudice in the charge given.  Moreover, by failing to
> object he did not give the judge an opportunity to
> consider the request.  Finally, we note that there was
> no request . . . for a fact-specific charge.

See State v. Mays, A-4077-95T4 (Jun. 4, 1999), pp. 10-11

(internal citations omitted).

Challenges to jury instructions solely as in error under

state law do not state a claim cognizable in federal habeas

corpus proceedings.  See Engle v. Isaac, 456 U.S. 107 (1982);

Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert.

denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408,

412 (D.N.J. 1987)(Thompson, J.)("Questions concerning

instructions are normally matters of state law and are not

cognizable in federal habeas corpus review.").  The finding by

the state appeals court should be "the end of the matter of

possible error based on the measuring of the evidence against the

state law because state, not federal, courts decide these

things." Morgan v. Krenke, 232 F.3d 562, 567 (7th Cir. 2000),

cert. denied, 532 U.S. 951 (2001).

Federal courts will evaluate jury instructions in the

context of the overall charge to the jury as a component of the

entire trial process.  See Estelle v. McGuire, 502 U.S. 62

(1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973); Henderson v.

Kibbe, 431 U.S. 145, 154 (1977); United States ex rel. Harding v.

Marks, 541 F.2d 402, 405 (3d Cir. 1976).  The court will then

13

determine whether the ailing instructions so infected the entire trial so that the resulting conviction violated due process rendering the trial fundamentally unfair.  See Estelle, 502 U.S. at 71.  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997); see also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis.  See Smith, 120 F.3d at 416-17; see also Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction:

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context

14

of the overall charge.  If the charge as a whole is
ambiguous, the question is whether there is a
reasonable likelihood that the jury has applied the
challenged instruction in a way that violates the
Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal

quotations and citations omitted).

In the instant case, the Court finds that the jury

instructions did not result in a fundamentally unfair trial or a

violation of Petitioner's due process rights.  Evidence at trial

consisted of various witnesses' testimony, the credibility of

which was to be weighed by the jury.  There is no indication that

the jury misapplied the challenged instruction; rather, the jury

made a credibility determination to believe the state witness'

testimony over Petitioner's defenses, and to find Petitioner

guilty.  Further, as explained by the Appellate Division, the

trial judge's charges were adequate and proper.  However, even if

the charge was improper, which neither the state courts nor this

Court finds, any error would be considered harmless in that it

did not have a substantial effect on the verdict.

Thus, Petitioner has not demonstrated that the actions of

the state courts "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United

States," or "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence

15

presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

**D.**    **Petitioner's Admission of Evidence Claims.**

In Grounds Two and Three, Petitioner argues that the trial judge made errors in allowing certain testimony.

**1.**    Ground Two

First, Petitioner claims that the trial judge did not cure the testimony of a detective who testified regarding a photograph of defendant.  He stated "Rahway State Prison was on the back of [the photograph]."  Defense counsel objected, the judge told the witness that, "I think the question was the date [of the photograph]," and the prosecutor withdrew the question.  The next day, defense counsel requested that the words "Rahway State Prison," located on the back of the photograph be hidden. Counsel did not object to the word Rahway on the front of the photograph, and did not request a limiting instruction. Regardless, the trial court charged:

> Now, obviously, there are in evidence not only the
> photographic arrays that were identified by the victims
> . . . but also other photographs as well.  And you may
> notice or [it] may have occurred to you by now that
> some or all of these photographs appear to have been
> taken by law enforcement authorities.  Jury is
> instructed that it is not to consider the fact that the
> agency or the law enforcement agency obtained a
> photograph of the defendant as prejudicing him in any
> way.  The photographs are not evidence that the
> defendant has never [sic] been arrested or convicted of
> any crime.  These types of photographs come into the
> hands of law enforcement from a variety of sources . .
> . .

16

R25 at p. 62.

The Appellate Division examined these claims on direct appeal, finding:

> When no request for a limiting or curative instruction is made, defendant must show that the failure to give such an instruction sua sponte constitutes an error "clearly capable of producing an unjust result."  Moreover, we infer from counsel's failure to request a curative instruction that he made a strategic decision not to draw more attention to this isolated, fleeting comment.  We owe some degree of deference to counsel's strategic or tactical decision and should carefully refrain from undermining or preempting them.  In addition, we infer from counsel's failure to request a curative instruction that at the moment he perceived no real prejudice from [the detective's] unfortunate remark regarding Rahway State Prison, particularly in light of the fact that initially counsel indicated that he had no objection to the reference to Rahway on the front of the photograph being submitted to the jury.  The remark was fleeting. The testimony relating to it, including the objection, consumes one-half page of transcript of a five-day trial, which included four days of testimony.  In that context, we conclude that the judge's instruction to the jury not to consider the photographs as evidence of the fact that defendant had been previously arrested or convicted of a crime to be adequate.  We must assume that the jury faithfully followed that instruction. Moreover, the fact that the jury failed to convict defendant of any of the charges arising out of the incident with K.P. leads to the conclusion that the failure of the trial judge to sua sponte give a curative instruction was not clearly capable of producing an unjust result.

R4 at pp. 14-15 (internal citations omitted).

17

2.   <u>Ground Three</u>

Petitioner also claims that the trial judge improperly admitted hearsay evidence regarding the electronic organizer found at the scene of the crime and used in investigation.  The Appellate Division discussed this issue extensively in its opinion affirming the conviction and sentence, stating:

> The morning after the incident, H.K.'s father went to the scene of the assault and found an electronic organizer.  He gave it to Sergeant Mazauskus of the Irvington Police Department who was investigating the incident.  No identifiable fingerprints were found on the organizer.
>
> At trial Belleville detective Edgar Panier testified that names and phone numbers were retrieved from the electronic organizer and they were "tracked." Mazauskus then testified that he used the organizer during his investigation.  The judge expressed concern that there were "so many potential problems with hearsay in this area" that she was going to require a Rule 104(a) hearing in order to consider the hearsay ramification.  Outside the presence of the jury, Mazauskus testified that there were ten names and telephone numbers on the organizer.  One was defendant's mother and several of the other persons were familiar with defendant.  One was the mother of defendant's child.  Another was a person defendant had dated.  The judge expressed concern that Mazauskus would relate to the jury information he received from the people with whom he talked.
>
> Eventually, the judge determined that the prosecutor could question Mazauskus regarding what he had said to the people whose names were listed in the organizer.  The judge further noted that Mazauskus could not tell the jury what "people said to him nor what conclusions he drew from what was said to him because that's the same effect of allowing him to tell the jury what the people said.  Anything he said, he may tell."  Before the jury, Mazauskus testified that he called the people whose names were listed in the electronic organizer and advised them he was trying to

18

contact defendant.  On May 31, 1989, a person
identifying himself as defendant contacted Mazauskus
and Mazauskus asked him to come to the police station.
Mazauskus further testified that on June 4, 1989, he
determined that defendant was in Minneapolis,
Minnesota.

At the conclusion of its case the State offered
into evidence the electronic organizer.  The judge
sustained defendant's objection in light of the State's
failure to otherwise connect defendant to the
organizer.  She also expressed concern about her
decision to permit testimony as to the identification
of the caller, observing that she thought the State
would present other evidence linking defendant with the
electronic organizer.  The judge concluded that the
State was attempting to link defendant with the
electronic organizer through hearsay and sustained the
objection.  She also noted that she "[would] consider
at the appropriate time . . . a cautionary instruction
to the jury as to the testimony concerning the phone
call."

Nevertheless, on summation the prosecutor
commented that the police obtained possession of an
organizer found at the scene by the victim's father and
made phone calls to numbers that appeared on the
organizer, "spoke to certain people, told those people
. . . inquired about Marvin Mays.  Told those people to
have Marvin Mays get in touch with him regarding a lost
[organizer].  Shortly thereafter, the officer receives
a call from someone who identifies himself as Marvin
Mays."

At the charge conference conducted pursuant to R.
1:8-7(b), the judge repeated her belief that evidence
that Mazauskus received a call from defendant was
hearsay if it was offered to prove that defendant was
the person on the other end of the phone.  She
expressed her further concern that that evidence would
permit the jury to speculate that defendant was the
owner of the electronic organizer and was therefore
present at the scene of the crime since the organizer
was found there.

Accordingly, during her instructions to the jury the
judge stated: [The trial judge informed the jury that the
organizer was not in evidence, that there was no evidence

19

from which they could conclude that the organizer belonged
to the petitioner, and that the evidence that the victim's
father found the organizer and police possessed it did not
"shed light" on whether or not petitioner was present at the
scene.].

(R4 at pp. 4-8)(internal citations and footnotes omitted).

The Appellate Division continued to state that, "[a]lthough
not considered by the parties, we consider the critical issue to
be whether the telephone call alleged to have come from defendant
to Mazauskus was properly authenticated." (R4 at 8). The court
concluded that:

> Here, we conclude that there were sufficient indicia of
> reliability to authenticate the telephone call.
> Mazauskus spoke to relatives and friends of defendant
> whose names appeared on the organizer. He asked them
> to have defendant telephone him. He received a call
> from someone who identified himself as defendant.
> Thus, we conclude that there were sufficient
> circumstantial indicia of reliability to establish a
> prima facie showing of authentification of defendant as
> the caller. Since the telephone call was properly
> authenticated, the content of the conversation, albeit
> hearsay, was admissible as a statement offered against
> a party, the defendant.

(R4 at 9). The Appellate Division found that the trial judge
should have issued an instruction that the jurors could use the
evidence only if they found that the caller was, in fact, the
defendant. However, the Appellate Division found that the
judge's instruction that the jury could not conclude that the
organizer belonged to Petitioner and could not use it to
establish his presence at the crime scene "cured any possible

prejudice that could have resulted to defendant from the trial with reference to the organizer." (R4 at 10).

Further, the Court notes that there is no evidence in the record that the information derived from the organizer was the sole information used to place Petitioner's photograph in the photographic line-up presented to the victims resulting in their out-of-court identifications. At Petitioner's <u>Wade</u> hearing[3] Detective Panier testified. In response to questions posed by defense counsel, he stated:

> Q.: How did you get the photograph of the defendant from Rahway Prison?
> A: I requested it.
> Q: How did you know that the defendant had been in Rahway Prison?
> A: I spent a good 30 to 40 hours at a computer in Newark Police Sex Crime Unit combined with numerous hours in the Essex County Prosecutor's Sex Crime Unit, Passaic Sex Crime Unit. I contacted every parole board in the state of New Jersey ... (indecipherable)... those paroled within the last year.
> I obtained all the [sic] this information from the various organizations and we weeded through people to get a suspect.
> Q: When you weeded through this list, would it be fair that your primary suspect was Mr. Mays because of the fact that the calculator left [at] the scene of the Irvington crime had his family members listed on the phone numbers?
> A: No, he wasn't my first primary suspect.
> Q: Did you yourself contact the people listed on the phone numbers on the calculator to try to get information about the owner of the calculator?
> THE COURT: This is beyond the Wade issue.
> [DEFENSE COUNSEL]: Excuse me.
> THE COURT: You're far afield from the Wade issue . . . on that subject.

---

[3]   See <u>United States v. Wade</u>, 388 U.S. 218 (1967).

Q:  Well, how did you learn who's calculator it was?
A:  I wasn't sure who's calculator it was.  I had no
    possession of it.  It was in possession of the
    Irvington Police Department, Detective Mazauskas.  I
    was made aware of it by him when I was in this office
    and that was their piece of evidence.  I know it was
    dusted for fingerprints.  I don't think there ...
    [indecipherable]..., but when they realized that it was
    actually not a calculator, but an electronic address
    and phone book, the name Mays I believe he had a
    brother – his mother from Passaic and also Mays came up
    in one of the hundred or so sex offenders I developed
    from my research with the parole board, Sara in Newark,
    and Essex County Prosecutor's records and my own
    records.
Q:  Did you attempt to obtain a photograph from Mr. Mays'
    mother or brother after you had discovered their name
    on the calculator?
A:  I don't recall.

(R19- page numbers not available).

On direct examination at trial, Detective Panier testified

as follows:

Q:  Was something – what was confiscated from the scene of
    the Irvington incident?
A:  An electronic calculator-type phone number and address
    device.
Q:  Was this information used in your investigation of the
    Belleville incident?
A:  Yes, it was.
Q:  How was it used?
A:  Names and phone numbers were retrieved from the device,
    the electronic device, and they were tracked.  And
    these people were contacted in a determination to find
    out –
THE COURT: Stop there.  Please wait for the next question.
Q:  Did your investigation of these phone numbers lead you
    to any one person?
A:  Yes.
Q:  Who did they lead you to?
A:  Marvin Mays.
Q:  Had you developed this suspect prior to viewing the
    calculator?
A:  [Indecipherable].
Q:  During the course of your investigation?

22

```
A:   Yes.
Q:   Had you ever shown a picture of Marvin Mays to [the
     Belleville victim]?
A:   No.
Q:   Were there other suspects that you developed prior to
     directing your attention to Marvin Mays –
A:   Yes.
Q:   – during the course of the investigation?
A:   Yes.
Q:   Were other pictures shown to [the Belleville victim] to
     the best of your recollection?
A:   Yes.
```

(R22- page numbers not available).  On cross-examination,

Detective Panier testified that he considered Petitioner a

suspect a day or two after the incident, based at least partly on

the evidence obtained from the organizer.  (R22- page numbers not

available).

Thus, the information in the record reveals that the

detective investigated the incident independently of the

information received from the calculator and considered

Petitioner a suspect, and also used the information from the

organizer to consider Petitioner a suspect.

3.   Analysis

With respect to Petitioner's claim that the trial court

erred in admitting the above-described testimony, it has been

held that federal courts must afford the states deference in

their determinations regarding evidence and procedure.  See Crane

v. Kentucky, 476 U.S. 683, 690 (1986)(stating "we have never

questioned the power of the States to exclude evidence through

the application of evidentiary rules that themselves serve the

interests of fairness and reliability, even if the defendant
would prefer to see that evidence admitted").  It is
well-established that "a state court's misapplication of its own
law does not generally raise a constitutional claim.  The federal
courts have no supervisory authority over state judicial
proceedings and may intervene only to correct wrongs of
constitutional dimension."  Smith v. Horn, 120 F.3d 400, 414 (3d
Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109
(1998).

In this case, the state courts found under New Jersey law
that the information relayed to the jury concerning the
electronic organizer was sufficiently reliable to authenticate
Petitioner as the person who called the detective.  Thus, the
state courts concluded that while the content of the conversation
between Petitioner and the detective was hearsay, it was
admissible as a statement offered against a party; the party
being the defendant.

Assuming, arguendo, that the trial judge did err under state
law in allowing the testimony, a state's misapplication of its
own law may constitute a violation of due process only in "rare"
cases.  See id. ("when that misapplication has the effect of
depriving a person of life, liberty, or property without due
process of law in violation of the Fourteenth Amendment, the
resulting federal constitutional error can be corrected by a

24

federal habeas court").  Evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial."  Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir.), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure."  Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say on the whole record that the constitutional error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is not harmless if "it aborts the basic trial process or denies it altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v. Clark, 478 U.S. 570, 578 n.6 (1986)).

In the instant case, this Court finds that Petitioner's case is not the "rare" instance where evidentiary rulings have violated his rights to due process. The Court finds after reviewing the record that the totality of the testimony presented at trial and considered by the jury was sufficient to render Petitioner's conviction a valid conviction, and that he was not deprived of due process due to the admission of the complained of testimony. The jury weighed the testimony presented to find the Petitioner guilty. There was no due process or any other constitutional violation.

Additionally, as the Appellate Division pointed out, the jury was "clearly and forcefully told that it could not conclude that the organizer belonged to defendant and it could not consider it to establish defendant's presence at the scene." Thus, any prejudice that could have resulted to Petitioner by reference to the organizer was "cured" for purposes of the constitutionality of his conviction.

As the state court determinations have not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

26

proceeding," this ground for a writ of habeas corpus will be denied.

**E.    Petitioner's Ineffective Assistance of Counsel Claim.**

Petitioner claims that his counsel was ineffective at trial because counsel failed to object to the false testimony of the witness-victim, and failed to cross and re-cross examine her regarding her false testimony.  Counsel also failed to object to a read back of testimony.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court held that in order to establish that trial counsel is ineffective, the petitioner must show that "counsel's performance was deficient," in that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed . . . by the Sixth Amendment," and "that the deficient performance prejudiced the defense." Id. at 687.  In order to establish prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz , 105 N.J. 42, 60-61 (1997)(quoting Strickland, 466 U.S. at 694).  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be
> highly deferential. It is all too tempting for a

27

> defendant to second-guess counsel's assistance after
> conviction or adverse sentence, and it is all too easy
> for a court, examining counsel's defense after it has
> proved unsuccessful, to conclude that a particular act
> or omission of counsel was unreasonable.  A fair
> assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of
> hindsight, to reconstruct the circumstances of
> counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Because
> of the difficulties inherent in making the evaluation,
> a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of
> reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be
> considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996), cert. denied 519
U.S. 1020 (1996).

Petitioner's arguments that his counsel was ineffective in
violation of the Sixth Amendment are without merit.  Petitioner
fails to show that the result of his case would have been
different had counsel more vigorously cross-examined the victim,
or successfully objected to the read back of testimony.  See
Strickland, 466 U.S. at 688; Fritz, 105 N.J. 60-61.

Also, this Court notes that a review of the record indicates
that counsel effectively represented Petitioner at trial.
Counsel argued so effectively that the jury could not find
Petitioner guilty on the counts of the indictment involving the
Belleville incident.  Also, counsel brought out on cross-
examination of the Irvington victim the various inconsistencies

28

that he thought would bolster his client's case, and in summation, attempted to lay out his theory of the case.  That the jury chose to give the victim's testimony credibility and find Petitioner guilty does not render his counsel ineffective.

Regardless, in Petitioner's PCR proceedings, the PCR judge held oral argument on the ineffective assistance of trial claims and found the following with regard to Petitioner's cross-examination claim:

> Clearly under the first prong of the Strickland test to be deficient counsel's performance must fall below objective standards of reasonableness, such as to undermined competence in the results that were obtained.  And I did not find that to be the case with regard to the handling of the cross-examination of the witness.  Now, defendant may argue that he wanted his attorney to ask specific questions, but that is not a controlling point.  He has a lawyer for a reason.  And it's very clear to me from having read this record that [defense counsel] had a theory, that he opened to it, all of the flaws in the defendant's case, and he made a very very effective closing.  I read the entire closing argument.  It was coherent and certainly at least with regard to one of the victims that was involved here it was obviously persuasive, but it was a coherent summation, and it fit with everything that he brought out on his cross-examination.  Not only of [victim], but the conflicts between the testimony of [victim], and the detective who testified concerning her identification was very clearly put to this jury. Whether [victim] told the truth or not, was for the jury to decide with regard to any as effects [sic] of her testimony and not for the prosecutor to decide.  I didn't see any obvious perjury issues there, and not for the defense attorney to decide.  It is for the defense to present all inconsistencies that he can, and to argue coherently a theory of your case, and he clearly did that with regard to this witness.

R30 at pp. 8-9.  The PCR judge also found no merit to Petitioner's argument that counsel should have objected to the read back of testimony to the jury, finding:

> . . . the petitioner raises the fact that trial counsel doesn't object to a read back of the testimony of witness [victim], and he claims to have been prejudiced thereby.  The request of the jury for read back of testimony, and the Court's appropriate response to a request for read back is not controllable every [sic] by objections of attorneys.  The Court has to make sure that it answers the – first of all, understands the question of the jury, and that it is answered accurately from the record that is available.  There can be no error with regard to counsel failing to object to this because it was not within counsel's control to respond to the request of the jury, it is within the judge's control. . . Not the type of thing that counsel could have prevailed had he objected, so that issue has no merits . . . .

R30 at pp. 9-10.

The Appellate Division examined these claims in the context of whether Petitioner had made a _prima_ _facie_ showing of ineffective assistance to warrant an evidentiary hearing.  The Appellate Division, citing _Strickland_, found no basis to grant relief on Petitioner's ineffective assistance of counsel claims.  The Appellate Division noted:

> The PCR judge concluded that trial counsel effectively cross-examined the alleged victim H.K. regarding potential inconsistencies as to her identification of defendant as her attacker in accordance with counsel's trial strategy.  She also addressed a variety of lesser claims about the effectiveness of trial and appellate counsel and found no deficiencies.  Our independent review of the record satisfies us that defendant failed to meet the heavy burden that either counsel's performance was deficient

and but for the performance of his trial or appellate counsel, the result would have been different.

(R10 at p. 6).

Thus, as the state courts applied the correct <u>Strickland</u> standard to Petitioner's claims and reasonably applied the facts, Petitioner has not shown, as required by 28 U.S.C. § 2254(d), that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  The petition for a writ of habeas corpus, is therefore denied.

<u>CONCLUSION</u>

For the foregoing reasons, the Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254 is denied.  The Court further finds that no certificate of appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253.

An appropriate Order accompanies this Opinion.

S/William J. Martini

_____
        WILLIAM J. MARTINI
      United States District Judge

Dated: 4/17/06

31